**TIDE WATER ASSOCIATED OIL COMPANY, Appellant,**

v.

**Fay Hunter HOGG et al., Appellees.**

No. 5158.

Court of Civil Appeals of Texas.

El Paso.

June 27, 1956.

Rehearing Denied Oct. 10, 1956.

726

Stubbeman, McRae & Sealy and W. B. Browder, Jr., Midland, for appellant.

Henry Russell, Pecos, Samuels, Brown, Herman & Scott, Fort Worth, Thomas L. White, Monahans, James E. Hara, Hawley C. Kerr, Tulsa, Okl., John R. Lee, Kermit, Gerald, Fitz-Gerald, Midland, for appellees.

FRASER, Justice.

George W. Hogg and wife, Lula Hogg, in an instrument dated November 15, 1924, leased some 9,433 acres of land to J. W. Grant for the purpose of operating and mining for oil, gas, and other minerals. The appellees, who were plaintiffs below, acquired the rights of George and Lula Hogg by conveyances, and the defendant, Tide Water Associated Oil Company, were assignees of the original lessee, J. W. Grant.

The appellees will hereinafter be referred to as plaintiffs, and appellant, Tide Water Associated Oil Company, as defendant.

Plaintiffs brought suit in trial court asking cancellation of lease and option contained therein, and asking for judgment quieting their title as against the said lease and option, and the claims of defendant Tide Water Oil Company, and in the alternative prayed that any judgment decreeing title in defendant should hold that Tide Water's title to seven-eighths of the minerals was subject to the performance of the obligations of the lease and agreement.

Defendant Tide Water admitted it was claiming title to seven-eighths of the minerals, and after pleading limitation, ratification and estoppel, filed its cross-action.

Various parcels of the original acreage were assigned and transferred by the original lessee, Grant, and as one of the assignees defendant Tide Water then became entitled to the terms and provisions of the lease.

The lease executed between George and Lula Hogg and Grant was on a lease form entitled "Producer's 88 Special—Texas Form". The following are the applicable and important provisions of said lease insofar as this particular controversy is concerned:

"That the said lessor, for and in consideration of Ten and no/100 Dollars cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, have granted, demised, leased and let and by these presents does grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas, potash and other minerals and of laying pipe line and of building tanks, powers, stations and structures thereon to produce, save, take care of said products, all that certain tract of land situated in the County of Winkler, State of Texas, described as follows, to-wit:"

(Here follows description of the various parcels covered by the lease)

"It is further provided and a part of the consideration herein that if Lessee or assigns has paid the yearly annual rental as provided herein for the period of 20 successive years, then in that event Lessee or assigns is to become the owner in fee of seven-eighths of all minerals on and under said land including potash, and lessor or assigns will execute the proper legal conveyance to the same without any further consideration on the part of Lessee.

"and containing 9433 acres, more or less.

"It is agreed that this lease shall remain in force for a term of 20 years

from this date, and as long thereafter as oil or gas, or potash or other mineral or either of them is produced from said land by the lessee.

"If no well be commenced on said land or the sinking of a shaft on or before the 5th day of January, 1926, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Midland, Texas, or its successors, * * * the sum of Nine Hundred Forty-three and 30/100 or ten cents rental per acre Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well or the sinking of a shaft for twelve (12) months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, * * and it is hereby agreed that in the event this lease shall be assigned as to a part or as to parts of the above described lands, and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rental due from him or them, such default, shall not operate to defeat or affect this lease, insofar as it covers a part or parts of said lands upon which the said lessee or any assigns thereof shall make due payment of said rental."

The trial court held for the plaintiff, and defendant has appealed. Appellant of course alleges error in the action of the court in awarding judgment to plaintiff and denying defendant judgment on its cross-action. These matters are covered in the first five points.

■ There was no dispute as to facts, and the entire case turns on the interpretation of the terms of the lease entered into between the Hoggs and Grant. It will be noted from the provisions of the lease hereinabove set forth that each party had the right to assign in whole or in part the estate held under the said lease. Appellant urges that because it has paid as provided in said lease the rental therein provided, for twenty successive years, that it is therefore entitled to be granted or conveyed the seven-eighths of the minerals as provided in the paragraph following the description of the land. Appellee, however, contends that this provision has not been met because all of the rentals on the entire tract included in the original lease have not been paid—in other words, holders of some of the other portions who were assignees from Grant, failed or defaulted in their rental payments—and appellee contends that the lease intended that before lessees or any of them could claim the right to compel lessor to convey the seven-eighths of the minerals, the rental of the entire 9,433 acres should have been paid. We do not think this interpretation by appellee is justified, as this lease expressly provided that either party could assign part or all of his estate, and the last provision herein copied clearly states that the covenants on said lease shall extend to the assigns, executors, administrators and successors of the parties to the lease, and further should the assignee or assignees of such part or parts fail or make default in the rental payment, such default shall not operate to defeat or affect this lease insofar as it covers part or parts of the lands of assignees who have duly made their required payments. On the basis of these provisions and viewing the contract as a whole we think the intent of the

parties is clear that he who kept up the obligations of the lease would be entitled to the full benefits of the lease with regard to his particular part or parts of the land covered.

Appellee further maintains that because the lease provided that its primary term should be twenty years unless minerals were produced before the expiration of that time, that the primary term of the lease lapsed on November 15, 1944. It is admitted that there was no production prior to that time. Appellee therefore urges that because the primary term of the lease had lapsed, appellant was not entitled to exercise its option to pay twenty successive yearly rental payments, and urges this position further by calling attention to the fact that there was no payment due on the lease until January 5, 1926, some thirteen or fourteen months after the execution date, and that therefore it would be or would have been impossible under the lease to have qualified under the optional provision so as to require appellee to convey. It has been pointed out that the lease terminated in twenty years unless minerals were produced, and that there was no way to continue the lease in the absence of production, and that because the first rental payment was not due for more than a year from the inception date of the contract it would therefore not be possible to make twenty successive yearly payments under the lease. It might appear as though a dilemma were suggested by the lease, because production would stop payment of the rentals, and if no production the lease only required rental payment for the last nineteen years of its life, so that therefore there was no way that lessees could under the terms of the lease legally pay for twenty successive years, thereby exercising its option and earning the right to have seven-eighths of the minerals conveyed.

However, considering the instrument in its entirety, it is clear that the parties agreed that lessee or an assignee of lessee had the clear right under the option ex-pressly granted to make twenty successive payments, as provided in the paragraph granting the option. The paragraph which deals with the rental payments permits payment or tender "on or before" January 5, 1926, and later on says "in like manner and upon like payments or tenders". We therefore believe that this paragraph, read in connection with the paragraph providing that if lessee or assigns has paid the yearly annual rental "as provided herein", for a period of twenty successive years, created a covenant running with the land, as well as the option, which would not be affected or destroyed by the termination of the primary term of the lease.

We think this lease expressly granted an option to appellant, and in promising to convey if the option were taken up, created thereby a covenant running with the land, so therefore, absent any production on the land leased by Tide Water, then Tide Water had the right to take advantage of the said option and covenant, and according to the stipulated facts here exercised such right by paying twenty successive yearly rental payments. The lease clearly stipulated that the assignee who complied with its provisions was entitled to the benefits of all the terms of the lease and the covenants contained therein. There was no production on Tide Water land, and we do not think the completion of a well by Texas Company on its land has any effect on this controversy, nor do we think the expiration of the primary term of the lease was intended to or did cancel and destroy the option expressly granted to purchase seven-eighths of the minerals by paying the provided rentals for twenty successive years.

We therefore hold that Tide Water, appellant-defendant, as the assignee of Grant, had fully complied with the terms of the original lease, and that lessor therefore became obligated as provided in the lease, to execute the proper legal conveyance of seven-eighths of all the minerals, including potash, on the land covered by the Tide Water assignment of the original lease, subject to the terms of the lease obligat-

ing lessee to develop the premises which is recited as the sole and only purpose of the lease.

We therefore sustain appellant's first five points, in accordance with the matters stated above. Appellant's other points are overruled.

The judgment of the trial court is reversed, and judgment here rendered decreeing and establishing title in appellant to seven-eighths of all minerals and potash on or under the lands covered by that much of the original lease as assigned to and held by defendant, Tide Water Associated Oil Company, subject to the applicable terms of the lease involved.

On Motions for Rehearing.

HAMILTON, Chief Justice.

Appellant and appellees filed motions for rehearing, and in addition asked for a clarification of our opinion as to the status of ownership of lessor and assigns, and lessee and assigns, in and to the lands involved. We overrule all motions for rehearing, but will endeavor to clarify our opinion somewhat.

In order to determine the interest held by lessee and assigns and the interest held by lessor and assigns, it can best be done by reviewing the lease contract and determining therefrom just what was conveyed by lessors to lessees in said conveyance, and on the other hand what was the consideration, the agreements and covenants agreed to be paid, kept and performed by lessees.

There is no dispute as to what the lease contract conveyed without considering the typewritten rider, which has been spoken of by the parties and even by us in our opinion as an option clause, but which probably would be better spoken of as a contingency clause. Without such clause the contract simply conveyed to lessee a determinable fee in ⅞ of the minerals thus determinable because the lease provided that

the grant was to be for a term of only twenty years, or as long thereafter as production of minerals was obtained, and this twenty year term was further limited by the provision that it would terminate in the absence of production unless drilling operations were carried on or rentals were paid.

The contingency clause which we have construed as being a part of the lease contract provides in effect that in the event the lease is kept alive by the payment of rentals, as distinguished from being kept alive by drilling operations or production of oil, then the ⅞ mineral interest becomes vested in the lessee in fee. This means a title forever, as distinguished from one that is limited in duration—in other words, lessee first had a determinable fee in the ⅞ of the minerals which ripened into a fee title to ⅞ of the mineral upon the happening of the contingency as provided in said rider.

In consideration for the conveyance of this estate it is recited in the lease contract that in addition to $10 cash on hand paid the lessee agreed to do certain other things, one of which was to

"deliver to the credit of lessor free of cost and in the pipeline to which they may connect their well, an equal ⅛ part of all oil produced and saved from the leased premises, also ⅛ of the net proceeds of the potash or other minerals at the mine".

Everything else that lessee agreed to do or became obligated to do under the regular lease he is still bound by, even though lessee is the owner in fee of ⅞ of the minerals. We think that the provision

"and lessor or assigns will execute proper legal conveyance to the same without any further consideration on the part of lessee"

is of no import in construing said contingency clause, because the covenants and agreements provided to be performed by lessee is the primary consideration for the

grant, and such is not in any sense "further consideration".

The relationship of lessor and lessee is exactly the same as though there had never been any limitation put upon the original grant which made his title a determinable fee until the happening of the said contingency. Since lessee's interest must bear the entire cost of operations, it is called what is commonly known as an operating interest, and lessor's interest is what is commonly known as a royalty interest.

If any questions posed by either the appellant or the appellees in their motions for rehearing are not answered herein, the answer can be found by referring to the terms of the lease contract itself.